JFL

JS 44 (Rev 06/17)

5:19-395

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet (SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM)

19 395

**I. (a) PLAINTIFFS**
Dr Gina Colamarino

**(b)** County of Residence of First Listed Plaintiff Berks
*(EXCEPT IN U S PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
John A Gallagher, Esquire
5 Great Valley Parkway, Ste. 210, Malvern, PA 19355

**DEFENDANTS**
2 Reading School District

County of Residence of First Listed Defendant Berks
*(IN U S PLAINTIFF CASES ONLY)*
NOTE IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED

Attorneys *(If Known)*
Randall C. Schauer, Esq
rschauer@foxrothschild com 610 458 7500

**II. BASIS OF JURISDICTION** *(Place an "X" in One Box Only)*

- ☐ 1 U S Government Plaintiff
- ☒ 3 Federal Question *(U S Government Not a Party)*
- ☐ 2 U S Government Defendant
- ☐ 4 Diversity *(Indicate Citizenship of Parties in Item III)*

**III. CITIZENSHIP OF PRINCIPAL PARTIES** *(Place an "X" in One Box for Plaintiff and One Box for Defendant)* *(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. NATURE OF SUIT** *(Place an "X" in One Box Only)* Click here for Nature of Suit Code Descriptions

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS**

PERSONAL INJURY
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

PERSONAL INJURY
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

PERSONAL PROPERTY
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**CIVIL RIGHTS**
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☒ 445 Amer w/Disabilities - Employment
- ☐ 446 Amer w/Disabilities - Other
- ☐ 448 Education

**PRISONER PETITIONS**

Habeas Corpus:
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

Other:
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

**FORFEITURE/PENALTY**
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 835 Patent - Abbreviated New Drug Application
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U S Plaintiff or Defendant)
- ☐ 871 IRS - Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 850 Securities/Commodities/ Exchange
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

**V. ORIGIN** *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding ☐ 2 Removed from State Court ☐ 3 Remanded from Appellate Court ☐ 4 Reinstated or Reopened ☐ 5 Transferred from Another District *(specify)* ☐ 6 Multidistrict Litigation - Transfer ☐ 8 Multidistrict Litigation - Direct File

**VI. CAUSE OF ACTION**
Cite the U S Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*: 42 U S C. §§12101, et seq
Brief description of cause: Disability Discrimination

**VII. REQUESTED IN COMPLAINT:** ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F R Cv P
DEMAND $ X
CHECK YES only if demanded in complaint: JURY DEMAND: ☒ Yes ☐ No

**VIII. RELATED CASE(S) IF ANY** *(See instructions)* JUDGE DOCKET NUMBER

DATE 01/25/2019 SIGNATURE OF ATTORNEY OF RECORD

FOR OFFICE USE ONLY

RECEIPT # AMOUNT APPLYING IFP JUDGE MAG JUDGE

JAN 25 2019



UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

19 395

DESIGNATION FORM

*(to be used by counsel or pro se plaintiff to indicate the category of the case for the purpose of assignment to the appropriate calendar)*

Address of Plaintiff: 520 North Wyomissing Avenue, Reading, PA 19607

Address of Defendant: 800 Washington Street, Reading, PA 19601

Place of Accident, Incident or Transaction: Reading, PA

***RELATED CASE, IF ANY:***

Case Number ______ Judge ______ Date Terminated: ______

Civil cases are deemed related when *Yes* is answered to any of the following questions

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court? Yes ☐ No ☑
3. Does this case involve the validity or infringement of a patent already in suit or any earlier numbered case pending or within one year previously terminated action of this court? Yes ☐ No ☑
4. Is this case a second or successive habeas corpus, social security appeal, or pro se civil rights case filed by the same individual? Yes ☐ No ☑

I certify that, to my knowledge, the within case ☐ is / ☒ is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE: 01/25/2019 ______ *Attorney-at-Law / Pro Se Plaintiff* 61914 *Attorney I.D. # (if applicable)*

**CIVIL: (Place a √ in one category only)**

***A. Federal Question Cases:***

- ☐ 1. Indemnity Contract, Marine Contract, and All Other Contracts
- ☐ 2. FELA
- ☐ 3. Jones Act-Personal Injury
- ☐ 4. Antitrust
- ☐ 5. Patent
- ☐ 6. Labor-Management Relations
- ☑ 7. Civil Rights
- ☐ 8. Habeas Corpus
- ☐ 9. Securities Act(s) Cases
- ☐ 10. Social Security Review Cases
- ☐ 11. All other Federal Question Cases *(Please specify)* ______

***B. Diversity Jurisdiction Cases:***

- ☐ 1. Insurance Contract and Other Contracts
- ☐ 2. Airplane Personal Injury
- ☐ 3. Assault, Defamation
- ☐ 4. Marine Personal Injury
- ☐ 5. Motor Vehicle Personal Injury
- ☐ 6. Other Personal Injury *(Please specify)* ______
- ☐ 7. Products Liability
- ☐ 8. Products Liability – Asbestos
- ☐ 9. All other Diversity Cases *(Please specify)* ______

**ARBITRATION CERTIFICATION**

*(The effect of this certification is to remove the case from eligibility for arbitration.)*

I, John A. Gallagher, counsel of record or pro se plaintiff, do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, § 3(c) (2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs.

☑ Relief other than monetary damages is sought.

DATE: 01/25/2019 ______ *Attorney-at-Law / Pro Se Plaintiff* 61914 *Attorney I.D. # (if applicable)*

NOTE: A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

Civ. 609 (5/2018)

JAN 25 2019



IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**CASE MANAGEMENT TRACK DESIGNATION FORM**

| Dr. Gina Colamarino | : | CIVIL ACTION |
|---|---|---|
| v. | : | |
| Reading School District | : | NO. 19 395 |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.) In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a Case Management Track Designation Form specifying the track to which that defendant believes the case should be assigned.

**SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:**

(a) Habeas Corpus – Cases brought under 28 U S.C. § 2241 through § 2255. ( )

(b) Social Security – Cases requesting review of a decision of the Secretary of Health and Human Services denying plaintiff Social Security Benefits. ( )

(c) Arbitration Cases required to be designated for arbitration under Local Civil Rule 53.2. ( )

(d) Asbestos – Cases involving claims for personal injury or property damage from exposure to asbestos. ( )

(e) Special Management – Cases that do not fall into tracks (a) through (d) that are commonly referred to as complex and that need special or intense management by the court. (See reverse side of this form for a detailed explanation of special management cases.) ( )

(f) Standard Management – Cases that do not fall into any one of the other tracks. ( X )

| January 25, 2019 | John A. Gallagher, Esq. | Plaintiff |
|---|---|---|
| **Date** | **Attorney-at-law** | **Attorney for** |
| 610-647-5027 | 610-647-5024 | jag@johnagallagher.com |
| **Telephone** | **FAX Number** | **E-Mail Address** |

(Civ. 660) 10/02

JAN 25 2019

**IN THE UNITED STATES DISTRICT COURT FOR**
**THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DR. GINA COLAMARINO | : | |
| | : | |
| Plaintiff | : | CIVIL ACTION NO.: |
| | : | |
| v. | : | |
| | : | |
| | : | JURY TRIAL DEMANDED |
| | : | |
| READING SCHOOL DISTRICT | : | |
| | : | |
| Defendant | : | |

---

**COMPLAINT**

Plaintiff, Dr. Gina Colamarino, by and through her undersigned counsel, the Gallagher Law Group, P.C., files this Complaint against defendant, Reading School District, and in support thereof avers as follows:

**I. THE PARTIES**

1. Dr. Colamarino is an adult individual and resident of the Commonwealth of Pennsylvania who lives at 520 North Wyomissing Avenue, Shillington, PA 19607.

2. The Reading School District ("the District") is a public school district with its principle place of business located at 800 Washington Street, Reading, PA 19601.

3. The District has at all material times employed more than fifteen (15) employees.

**II. JURISDICTION**

4. The Court has jurisdiction over this matter by its authority to hear cases arising under the laws of the United States pursuant to 28 U.S.C. §1331, and the specific jurisdictional provisions found within 42 U.S.C. §§12101, *et seq*., ("ADA") as amended.

5. On or about April 28, 2018, Dr. Colamarino filed a Charge of disability discrimination and hostile work environment ("the Charge") against the District.

6. EEOC issued a Right to Sue letter on October 26, 2018, and this action is being filed timely subsequent to receipt of same by plaintiff.

## III. VENUE

7. Venue is proper in the Eastern District of Pennsylvania pursuant to 28 U.S.C.S. §1391(b) because, *inter alia*, 1) defendant is situate in in the Eastern District of Pennsylvania; and, 2) the claims arose in the Eastern District of Pennsylvania.

## IV. BACKGROUND

### A. <u>Plaintiff's Educational Background</u>

8. Plaintiff was born on May 31, 1970.

9. Plaintiff is a 1992 graduate of West Chester University.

10. In 2001, plaintiff earned her Pennsylvania Teaching Certification for Special Education from West Chester University.

11. In addition to other education/accreditations, she earned a Master's Degree in Special Education from West Chester University in 2001, a Special Education Supervisory Certification from Penn State University in 2009, a Doctorate in Teaching/Instructional Leadership from Walden University in 2009 and became a Licensed Behavior Specialist through the Pennsylvania State Board of Medicine in 2016.

### B. <u>Plaintiff is Hired by the District - Pre-Attack Job Duties as Emotional Support Teacher for Developmentally Disabled Youth and Adolescents</u>

12. In or around 2003, Dr. Colamarino began her employment with the District as an Elementary Emotional Support Teacher in its Special Education Department.

13. In between the commencement of her employment and April 8, 2008, Dr. Colamarino taught children ranging in age from pre-teen to adolescence who were placed at the District's 16th and Haak Elementary School ("Haak").

14. The children who reside within the District and require Emotional Support instruction often face grave physiological, emotional, psychological and behavioral challenges that can cause them to become violent in words, mannerisms, and actions.

15. Dr. Colamarino is a woman of relatively short stature (under 5'3" tall) and less than imposing girth and physical stature.

16. These children are male or female, and male students beyond the age of 11 could often be substantially taller, heavier and more physically strong than Dr. Colamarino.

17. This physical advantage, obvious to all, couple with the grave emotional deficits suffered by the students, not to mention their developmental immaturity, frequent lack of impulse control and social/familial instability, made Dr. Colamarino's job deeply challenging and, from time to time, scary.

18. In April 2008, while working at Haak, plaintiff was suddenly and violently assaulted by a special education student following class.

19. It took four (4) adults several minutes to stop this violent assault, and as a result, plaintiff suffered grave physical injuries including, but not limited to, bulging discs in her neck and low back, a meniscus tear in her right knee, substantial bruising throughout her body, along with areas of soft-tissue and nerve damage.

20. As a result of her physical injuries, Dr. Colamarino was incapacitated for approximately six (6) months.

21. In addition to her physical injuries, some of which are permanent in nature, plaintiff sustained, and continues to suffer from grave, continual and ongoing emotional and psychological trauma.

22. Plaintiff has been diagnosed with Post-Traumatic Stress Disorder ("PTSD").

### C. Plaintiff Returns to a New Non-Teaching Position She Holds Without Incident for Nearly a Decade

23. During her absence following the attack, plaintiff applied and was hired for a position as a Behavioral Specialist, providing District-wide assistance and guidance to the Special Education Department(s).

24. This position did not entail any requirement that Dr. **Colamarino** work with children in a classroom environment.

25. Plaintiff began working as a Behavior Specialist in or around September 2008.

26. In between that date and the conclusion of the 2016-2017 academic year, plaintiff performed her duties as a Behavior Specialist ably, consistently, professionally and without serious incident or blemish.

27. During the time she served as the District's Behavior Specialist, it was known by the District's leadership that plaintiff suffered from PTSD caused by the April 2008 beating that she sustained, but it did not affect the performance of her professional duties.

28. Up until the beginning of the 2012-2013 school year, the District employed four (4) persons as Behavior Specialists.

29. However, at the commencement of the 2012-2013 school year, three (3) of those positions were eliminated.

30. Thereafter, plaintiff alone provided services as the District's lone Behavior Specialist up until that position was purportedly eliminated in or around the summer of 2017.

**D. <u>Plaintiff's Position as Behavior Specialist Eliminated and District Refuses to Retain Her in New Position for Which She is Qualified.</u>**

31. During the summer following the 2016-2017 school year, plaintiff was advised that she would no longer be serving as the District's Behavior Specialist.

32. Instead, the District advised, there was a new position being created, entitled Behavioral Analyst.

33. Plaintiff told that she was not qualified due to certain accreditations she lacked.

34. However, plaintiff had adequate education and experience for the position.

35. Plaintiff was not hired for the position.

36. At this time, the District has and/or is securing services for this position and/or positions adjunct thereto via, *inter alia*, third-parties not regularly employed by the District.

37. Plaintiff has at all times been ready, willing and able to provide the some or all of the services required for the position deemed "Behavioral Analyst," and/or any position adjunct thereto being fulfilled by third-parties, with or without reasonable accommodations.

38. The District's continuing failure to employ plaintiff in the position of Behavioral Analyst, or in any position adjunct thereto, constitutes a violation of the ADA.

**E. <u>Plaintiff is Knowingly Placed in a Dangerous Teaching Position Without her Knowledge and Despite a Reasonable Accommodation Request Specifying that such a Placement was Inconsistent with her Condition(s)</u>**

39. After being informed that her services as Behavioral Specialist were (allegedly) no longer required, the District informed plaintiff that she would be returned to the classroom as a special education teacher for the first time since her attack had transpired nearly ten (10) years before.

40. Plaintiff thereafter provided the District with an outline of reasonable accommodations prepared by her physician in connection with such a return.

41. These accommodations included, but were not limited to, not being placed into a position wherein she would be required to physically restrain students.

42. It was at that time well known to the District that many adolescent and older students in the District suffering from psychological, emotional and/or behavioral disorders from time to time required physical restraint during the school year

43. She was offered one of two teaching positions: a) teaching regular education credit recovery 14-15 year-old students at the District's City Line location; or, b) teaching special education children at another location.

44. Plaintiff was not told in connection with these offers that the students she would be teaching at City Line were "alternative placement" students who were often truants, recently incarcerated, characterized as hyper-aggressive, etc.

45. The District, in fact, deliberately withheld this information from plaintiff.

46. Plaintiff unwittingly selected the City Line offer, and commenced teaching there in or around August 2017.

47. It became immediately apparent that plaintiff had been placed in a dangerous position that was entirely inconsistent with her accommodation request.

48. Consequently, with the help of her Union, plaintiff was extricated from City Line by mid-September 2017.

49. At that time, there were multiple positions available throughout the District for which plaintiff was qualified, and which would have suited plaintiff's need for a reasonable accommodation.

50. However, the District purposefully and wantonly refused to offer any such positions to plaintiff.

51. Instead, it presented her with three options a) teaching autistic children up to 21 years of age with behavioral and psychological conditions that could cause them to become violent, agitated and otherwise in need of physical restraint (not to mention self-protective maneuvers that plaintiff was incapable of performing); b) working as a substitute for special needs children wherever needed throughout the District, where plaintiff would unquestionably encounter violent and/or disturbed children; or, 3) teaching students at Glenside Elementary.

52. Given the choices, plaintiff realized that the only possibility was the Glenside position.

53. However, before accepting same, plaintiff inquired as to whether the students to whom she was to be assigned were "emotional support" students who required behavioral plans.

54. Plaintiff was assured that the subject students were learning support children without violent tendencies and hence without behavioral plans.

55. Plaintiff accepted the Glenside assignment.

56. However, plaintiff soon learned that Glenside presented two sharp obstacles.

57. The first, and by far most significant, was that the students to whom plaintiff was assigned were, contrary to the District's intentional, knowing misrepresentation, children who required behavioral support.

58. Consequently, plaintiff's return to the classroom environment at Glenside caused her increasing, and ultimately unrelenting, anxiety and related PTSD symptoms which gradually erodes plaintiff's ability to teach students in that setting.

59. The second issue related to the fact that plaintiff had recently had a foot and ankle injury (torn ligament) and the classroom on Glenside was on the third floor – 48-steps separated plaintiff from her classroom each day, and there was no elevator.

60. Plaintiff sought accommodations that included one whereby she would only be required to climb the 48 stairs required to navigate to the classroom once per day, in the morning, and descending once in the afternoon.

61. More critically, plaintiff sought accommodations in the form of a transfer to one or more vacant positions within the District for which she was qualified, and for which her PTSD would not cause any problems.

62. The District's reaction to these requests was visceral, and it chose to weaponize the ADA in an effort to punish plaintiff and avoid its legal obligation to extend her reasonable accommodations.

63. In the course of doing so, the District placed an inordinate amount of pressure on plaintiff to obtain updated medical certifications which, in truth, it knew were unnecessary.

64. During a meeting taking place on March 15, 2018, the District threatened her with a *Loudermill* hearing and asserted, incorrectly, that the accommodations she sought made her incapable of performing her essential job duties.

65. Plaintiff informed the District that she intended to fulfill its insistent demands for updated medical paperwork supporting her reasonable accommodation request.

66. Although the District was entitled to seek such paperwork, it in fact knew perfectly well that plaintiff had medical support for her accommodation requests.

67. In insisting on updated medical records as a condition of accommodating plaintiff under threat of a pre-termination hearing, the District in effect weaponized the ADA to intimidate plaintiff and to make her efforts to obtain accommodations seem futile.

68. The District used the ADA like a cudgel before, during and after this meeting – while employers have the "right" under ADA to ask a parapalegic for medical proof of paralysis, or a blind woman for a note certifying her blindness – doing so in an aggressive, antagonistic,

threatening and coercive way, as the District did in this instance, is itself a violation of the letter and the spirit of the Act.

69. Following the March 15, 2018 meeting, the District made a unilateral decision to remove plaintiff from her position at Glenside.

70. It transferred her to a temporary non-teaching position at the District.

71. This position did not involve any teaching duties; instead, plaintiff was tasked with updating outdated individual education plans ("GIEPs") for senior high school gifted students.

72. In offering plaintiff this position, the District viewed the position as temporary in nature, and one that would not be required beyond the conclusion of the school year.

73. Plaintiff thereafter filed a Charge of Disability Discrimination with EEOC, and this was promptly served upon the District.

74. Plaintiff was kept very busy performing this critical assignment, and by her estimation easily could have continued to be productive in the role through the 2018-2019 school year and beyond.

75. Subsequent to receiving the Charge, the District (which had continued to ramp up pressure on plaintiff concerning her medical certifications even though she had timely provided same) informed plaintiff that she would be discontinued in her **GIEP** role and, even though plaintiff made every effort to convince the District that it was an appropriate accommodation for her, the District punitively removed her from the position.

76. During this same time, plaintiff attempted to secure a stable position for the 2018-2019 school year in the event that her efforts to maintain her **GIEP** role failed.

77. Plaintiff maintained in the alternative that there were several other open positions throughout the District for which she was qualified and suited.

78. The District ignored her efforts to secure one of these positions.

79. Indeed, the District during this time, and others material hereto, routinely created positions for which plaintiff was qualified, and hired recent college graduates to fulfill those positions.

80. In addition, the District during this time, and others material hereto, routinely offered vacant positions for which plaintiff was qualified to recent college graduates who filled such positions.

81. Rather than hire plaintiff for any one of numerous positions for which plaintiff was qualified and could have performed with or without reasonable accommodations, the District instead chose to inflict harm on plaintiff.

82. Prior to the start of the 2018-2019 school year, the District, incredibly, proposed to send her back to where she had been attacked, Haak, to once again teach children with special education needs, including those requiring emotional support and/or behavior plans.

83. Purposefully ignoring plaintiff's core disability, her PTSD, the District maintained that Haak was a perfect location because plaintiff would not be required to climb any stairs.

84. Plaintiff rejected the Haak assignment, for obvious reasons; she had - as the District knew - almost been beaten to death by a student there.

85. Since plaintiff rejected the Haak "accommodation," plaintiff has not been offered any suitable position within the District.

86. During this time, plaintiff has applied for numerous open positions within the District for which she is qualified and interested, but she has not been seriously considered as a candidate for any one of them.

87. Insofar as the District is apparently concerned, plaintiff is "out of sight and out of mind."

88. There is little doubt the District would prefer that plaintiff resign her employment and "get out of our hair."

89. She is at or near the top of the District's pay scale, and the District has seized on plaintiff's disability, and need for accommodations, by creating a hostile work environment in an effort to drive plaintiff from the District and replace her with "cheaper labor."

90. However, plaintiff believes, and therefore avers, that ADA mandates that the District offer plaintiff any open position for which she is qualified and can perform with or without a reasonable accommodation.

91. Plaintiff believes that just as there have been numerous such positions since the spring of 2018, there are such positions now, and will be such positions in the future.

92. As a result of the aforesaid conduct by defendant, plaintiff has suffered great losses compensable under ADA, which continue to this date and will continue into the future absent a judgment in her favor in this matter.

**COUNT I**
**PLAINTIFF V. READING SCHOOL DISTRICT**
**Violation of the Americans With Disabilities Act,**
**42 U.S.C.S. § 12101 et seq., as amended ("ADA")**

93. Plaintiff hereby incorporates all other paragraphs in this Complaint as though fully set forth at length herein.

94. At all times material hereto, plaintiff had one or more disabilities as defined under the ADA.

95. At all times material hereto, plaintiff was qualified and able to perform the essential functions of her job, or others comparable to and available within the District, with or without reasonable accommodations.

96. At all times material hereto, defendant was well aware of plaintiff's disability, and that she was able to perform her essential job duties with or without reasonable accommodations.

97. Nevertheless, defendant on more than one occasion separated plaintiff from a job she was performing without good cause.

98. Alternatively and/or additionally, defendant was at all times material hereto, well aware of plaintiff's disability(ies), concluded without cause that plaintiff was unable to perform her essential job duties with or without reasonable accommodations, and on more than one occasion separated plaintiff from a job she was performing ably under false pretense and/or without cause because of said disability(ies).

99. Alternatively and/or additionally, defendant took impermissible punitive action against plaintiff because she was disabled and/or because she sought a reasonable accommodation.

100. Moreover, defendant created a hostile work environment throughout times material hereto by creating an environment placing unreasonable demands on plaintiff, while acting in a threatening, coercive and unreasonable fashion specifically designed to punish plaintiff because she was disabled and/or because she sought one or more reasonable accommodations.

101. At times material hereto, defendant has acted with deliberate indifference to plaintiff's disabilities, her rights under the ADA and her legitimate need for reasonable accommodations supported by competent medical certifications.

102. The defendant has at times material hereto acted willfully, wantonly and punitively because of plaintiff's disabilities and requests for accommodations and, in doing so, has not only created an unlawful hostile work environment, but has trampled her rights under ADA by denying her reasonable accommodations and by unreasonably, and sometimes pretextually, denying her job opportunities for which she was qualified to perform with or without a reasonable accommodation.

103. In addition to the foregoing, the defendant has engaged in mixed motive discrimination, at once choosing to intentionally deny plaintiff's rights under the ADA because she was disabled and because she sought reasonable accommodations, in an effort to drive her to resignation so it could replace her with recent college graduates who it could pay far less than plaintiff for many years to come.

104. Defendant has on more than one occasion elected to hire persons who were not disabled, and who were less qualified that was plaintiff for jobs for which plaintiff was suitable, and able to perform with or without reasonable accommodations.

105. Defendant failed to adhere to its own policies in demoting, passing over, suspending, furloughing, terminating plaintiff, or by placing her leave, which at the same time honoring said policies where other comparable employees without disabilities were concerned..

106. Defendant's policies violated ADA as written and/or as applied.

107. Defendant treated plaintiff differently than it did its similarly situated, but non-disabled employees and/or candidates for employment.

108. Defendant adhered to its own policies when it disciplined, transferred and/or accommodated other employees who did not have disabilities, or those who were not regarded as disabled, but did not do so where plaintiff was concerned.

109. Defendant treated plaintiff differently than it did similarly situated employees and/or candidates who did not have a disability, or who were not regarded as disabled or who did not seek reasonable accommodations.

110. The aforementioned actions and inactions of defendant all constitute a hostile work environment and/or demonstrate disability-based animus directed towards plaintiff.

111. Defendant's discriminatory and/or retaliatory philosophies, practices, policies, and conduct, as stated above, otherwise and to be proved at trial, violated the Americans with Disabilities Amendments Act, 42 U.S.C.S. § 12101 *et seq.*, as amended.

112. As a result of defendant's discriminatory and/or retaliatory conduct, plaintiff has suffered great losses, including back pay and forward pay, loss of benefits, great emotional distress, embarrassment, loss of reputation, loss of the pleasures she experiences when gainfully employed, humiliation and other damages that will be proved at trial in this matter.

113. All of the aforesaid acts were done with malice and reckless disregard of federal civil rights laws.

114. Dr. Colamarino is entitled to punitive damages.

**WHEREFORE**, plaintiff, Dr. Gina Colamarino demands judgment in her favor and against defendant the Reading School District, in an amount sufficient to make her whole for lost past and future wages, compensatory damages, punitive damages, attorneys' fees, costs, and such other relief as Your Honorable Court deems just and appropriate. Additionally and alternatively, plaintiff seeks any and all equitable relief available to her in accordance with ADA, as well as

attorney's fees, costs and such other relief, legal and equitable, available to her as deemed just and appropriate by Your Honorable Court.

Date: January 25, 2019

**GALLAGHER LAW GROUP, P.C.**

BY: ______________________________

JOHN A. GALLAGHER, Esquire
Counsel for Plaintiff
Atty. ID No. 61914
5 Great Valley Parkway, Suite 210
Malvern, PA 19355
610-647-5027
610-647-5024 (FAX)
jag@johnagallagher.com